**THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

SAFARI CLUB INTERNATIONAL,

      Petitioners,

v.

                                          No. Civ. 15-930 JCH/LF

SALLY M.R. JEWELL, in her official
capacity as Secretary of the U.S. Department
of the Interior; the U.S. DEPARTMENT
OF THE INTERIOR; DANIEL M.
ASHE, in his official capacity as Director of
the U.S. Fish and Wildlife Service; and the
U.S. FISH AND WILDLIFE SERVICE,

      Respondents.

**MEMORANDUM OPINION AND ORDER**

On December 4, 2015, Defendants Sally M.R. Jewell, the United States Department of the Interior, Daniel M. Ashe, and the United States Fish and Wildlife Service ("FWS") (collectively, "the Federal Defendants") filed a Motion to Transfer Venue to the District of Arizona for Consolidation with Related Cases (ECF No. 16) and requested expedited review. The Federal Defendants move to transfer this case to the District of Arizona for consolidation with three other cases challenging the same agency action: *Center for Biological Diversity v. Jewell*, 4:15-cv-00019-TUC-JGZ (D. Ariz.) (filed January 16, 2015) (hereinafter "CBD case"); *Arizona and New Mexico Coalition of Counties for Economic Growth v. U.S. Fish and Wildlife Service*, 4:15-cv-00179-TUC-FRZ (D. Ariz) (filed February 22, 2015) (hereinafter "Coalition case"); and *WildEarth Guardians v. Ashe*, 4:15-cv-00285-JGZ (D. Ariz) (filed July 2, 2015) (hereinafter "WildEarth Guardians case"). All three Arizona cases challenge under the

Endangered Species Act ("ESA"), the National Environmental Policy Act ("NEPA"), and the Administrative Procedures Act ("APA") the FWS's January 16, 2015 revision of the federal rule governing the agency's program to reintroduce a nonessential experimental population ("NEP") of Mexican wolves into Arizona and New Mexico in accordance with Section 10(j) of the ESA ("the 10(j) Rule").

In this case, Petitioner Safari Club International ("Safari Club") also challenges the 10(j) Rule, alleging that the rule revisions violate the ESA and NEPA, "harm the interests of the members of the hunting community who rely on the elk, deer and other wildlife upon which the Mexican wolves prey; and undermine the long-term conservation and restoration of the Mexican wolf population." Petition ¶¶ 3-4, ECF No. 1. Safari Club asserts that "[i]n assessing the way in which the revisions would impact the hunting community and the wildlife populations upon which the hunting community rely, the FWS ignored relevant data, failed to collect and evaluate relevant data, and relied upon a mitigation strategy that would exacerbate the harm caused by the wolves rather than alleviate or reduce it;" and "[t]he FWS refused to incorporate provisions in the rule that would provide protections against potential harms to the conservation of the Mexican wolves, and in doing so, sacrificed the willingness of the State of New Mexico and the hunting community to participate in and agree to the rule changes." *Id.* ¶ 2.

The District Court for the District of Arizona ("Arizona court") has extended summary judgment briefing deadlines in the consolidated Arizona cases in order to allow the Federal Defendants time to litigate the motion to transfer this case to Arizona for the purpose of consolidation with the Arizona cases. The Court, having considered the motion, briefs, pleadings, and applicable law, concludes that the motion to transfer venue should be granted.

## I.    BACKGROUND

Once a species is listed as endangered or threatened under the ESA, the Secretary of the Interior may authorize the release of any population of such endangered or threatened species "outside the current range of such species if the Secretary determines that such release will further the conservation of such species." 16 U.S.C. § 1539(j)(2)(A). Such an introduced population that has been so designated is an "experimental population" when the population is wholly separate geographically from nonexperimental populations of the same species. 16 U.S.C. § 1539(j)(1); 50 C.F.R. § 17.80(a). "The term essential experimental population means an experimental population whose loss would be likely to appreciably reduce the likelihood of the survival of the species in the wild." 50 C.F.R. § 17.80(b). "All other experimental populations are to be classified as nonessential." *Id.*

The designation of experimental populations must be by rule promulgated under the APA, 5 U.S.C. § 553. 50 C.F.R. § 17.81(a). The rules designating experimental populations are referred to as "10(j) rules" and are codified at 50 C.F.R. § 17.84. As relevant here, the FWS "shall consult with appropriate State fish and wildlife agencies, local governmental entities, affected Federal agencies, and affected private landowners in developing and implementing experimental population rules." *Id.* § 17.81(d). "Any regulation promulgated pursuant to this section shall, to the maximum extent practicable, represent an agreement between the Fish and Wildlife Service, the affected State and Federal agencies and persons holding any interest in land which may be affected by the establishment of an experimental population." *Id.*

### A.    The 10(j) Rule and Arizona's Consolidated Cases

The history of the revised 10(j) Rule at issue here pertaining to the Mexican wolf and the litigation history of the three Arizona cases that followed publication of the 10(j) Rule in the

Federal Register are set forth in detail in the Honorable William P. Johnson's Memorandum Opinion and Order Granting Defendants' Motion to Transfer Venue to the District of Arizona for Consolidation with Related Case (ECF No. 16-2), filed in the Coalition case, 15cv125 WJ/WPL, that originated in the District of New Mexico before transfer to the Arizona court. *See* Defs.' Mot. to Transfer, Ex. B (Mem. Op. and Order) at 1-6, ECF No. 16-2. The Court hereby adopts and incorporates the background set forth in that opinion. *See id.*

### B.      The Safari Club Petition

On October 16, 2015, Safari Club filed its lawsuit challenging the 10(j) Rule in the District of New Mexico. Petition, ECF No. 1. The Petition contains five causes of action for violation of the ESA (Counts I-V) and three for violations of NEPA (Counts VI-VIII).

### 1.      Safari Club's ESA claims

In Counts I and II, Safari Club asserts that the Federal Defendants violated their statutory obligations under the ESA and APA, as well as their regulatory obligations, by failing to base the 10(j) Rule revisions for the Mexican wolf NEP on an agreement between the FWS, the New Mexico Commission, the New Mexico Department of Game and Fish ("NMDGF"), and the hunting community. *See id.* ¶¶ 127-38. In Count II, Petitioner alleges that the Federal Defendants violated their regulatory obligations under 50 C.F.R. § 17.81 by adopting revisions for the Mexican wolf NEP that resulted in the NM Commission and NMDGF withdrawing completely from the wolf recovery program and/or that did not properly assess or mitigate the impact of the revisions to the hunting community. *Id.* ¶¶ 133-38.

Safari Club contends in Counts III and IV that the Federal Defendants violated their statutory obligation under the ESA and APA, and their regulatory obligations, to only authorize the release of an experimental population outside its current range when it will further the

4

conservation of the species, asserting that the withdrawal from the process by the NM Commission and NMDGF has harmed the Mexican wolf's recovery. *See id.* ¶¶ 139-51. In Count IV, Petitioner alleges a violation of the Federal Defendants' regulatory obligation under 50 C.F.R. § 17.81(b) by drafting the revisions "to authorize an expanded release of the Mexican wolf NEP despite a lack of scientific and commercial data demonstrating that the release would further the conservation of the species," and by adopting the revision without agreement of the State of New Mexico wildlife management authorities. *See id.* ¶¶ 145-151.

Petitioner alleges in Count V that the Federal Defendants' failure to include provisions, such as those that would protect the NEP from the risk of reclassification to essential, threatened or endangered status, violated the requirements in the ESA to adopt regulations that are necessary and advisable for the conservation of the species. *Id.* ¶¶ 152-59. Safari Club also asserts that the Federal Defendants' violated the ESA by failing to adequately mitigate any unacceptable impact on wild ungulate populations, forcing the State of New Mexico's wildlife management authorities to withdraw from the recovery effort, causing more harm to the wolf than good. *See id.*

## 2.  Safari Club's NEPA claims

In Count VI, Petitioner asserts that the Environmental Impact Statement ("EIS") and Record of Decision ("ROD") that FWS prepared violated NEPA because FWS failed to provide adequate mitigation measures and failed to analyze the environmental impacts of the 10(j) Rule revision. *See id.* ¶¶ 160-70. Safari Club complains that the State cannot invoke the mitigation strategies until demonstrable harm to wild ungulate populations has already occurred, the 10(j) Rule requires a lengthy and detailed process that will allow the wolves to cause additional harm before the States have completed all the procedural requirements necessary to seek permission to

remove wolves, and places no time constraints on the Federal Defendants to authorize removal of wolves, allowing the wolves to cause more harm. *Id.* ¶ 164.

Safari Club alleged in Count VII violations of NEPA and the APA by the Federal Defendants when they based the 2014 EIS and ROD on studies assessing the impact of a wolf population far lower than the population planned and by failing to accurately analyze the impact of the mitigation process to the wild ungulate populations, the State, the hunters, and the hunting community. *See id.* ¶¶ 170-78.

Finally, Petitioner asserts in Count VIII a violation of NEPA statutory and regulatory obligations, including 40 C.F.R. § 1506.2(d), in finalizing the 2014 EIS despite inconsistencies with New Mexico State plans and laws designed to conserve wildlife resources and without providing a statement describing the extent to which they would reconcile their actions with State plans or law. *See id.* ¶¶ 179-184.

## II.   STANDARD

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought . . . ."   28 U.S.C. § 1404(a). The "interest of justice" analysis is separate from the convenience analysis and is concerned with judicial efficiency and the avoidance of conflicts between coordinate courts. *See Van Dusen v. Barrack*, 376 U.S. 612, 616, 626-27 (1964) (noting that Section 1404(a) "empowers a district court to transfer 'any civil action' to another district court if the transfer is warranted by the convenience of parties and witnesses and promotes the interest of justice" and conducting separate interest-of-justice analysis) (internal footnote omitted); *Research Automation, Inc. v. Schrader-Bridgeport Intern., Inc.*, 626 F.3d 973, 978 (7th Cir. 2010) ("The 'interest of justice' is a separate element of the transfer analysis that relates to

the efficient administration of the court system."); *Feller v. Brock*, 802 F.2d 722, 729 n.7 (4th Cir. 1986) (noting that "interest of justice" analysis under § 1404(a) includes "the avoidance of conflict between coordinate courts"). "The interest of justice may be determinative, warranting transfer or its denial even where the convenience of the parties and witnesses points toward the opposite result." *Research Automation*, 626 F.3d at 978.

A district court enjoys greater discretion to transfer a case under § 1404(a) than to dismiss the action based upon *forum non conveniens*. *Chrysler Credit Corp. v. Country Chrysler, Inc.*, 928 F.2d 1509, 1515 (10th Cir. 1991). A court should decide motions to transfer on an individualized, case-by-case basis. *Id.* at 1516. "The party moving to transfer a case pursuant to § 1404(a) bears the burden of establishing that the existing forum is inconvenient." *Id.*at 1515. In considering a motion to transfer, the court should consider the following discretionary factors:

> the plaintiff's choice of forum; the accessibility of witnesses and other sources of proof, including the availability of compulsory process to insure attendance of witnesses; the cost of making the necessary proof; questions as to the enforceability of a judgment if one is obtained; relative advantages and obstacles to a fair trial; difficulties that may arise from congested dockets; the possibility of the existence of questions arising in the area of conflict of laws; the advantage of having a local court determine questions of local law; and[ ] all other considerations of a practical nature that make a trial easy, expeditious and economical.

*Employers Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1167 (10th Cir. 2010) (quoting *Chrysler Credit Corp.*, 928 F.2d at 1516). "Merely shifting the inconvenience from one side to the other, however, obviously is not a permissible justification for a change of venue." *Id.* (quoting *Scheidt v. Klein*, 956 F.2d 963, 965 (10th Cir. 1992)). Unless the balance of interests "is strongly in favor of the movant the plaintiff's choice of forum should rarely be disturbed." *Scheidt*, 956 F.2d at 965 (quoting *William A. Smith Contracting Co. v. Travelers Indem. Co.*, 467 F.2d 662, 664 (10th Cir. 1972)).

III.    ANALYSIS

A.    This case might have been brought in the District of Arizona

In order for the court in the transferee district to be one in which the case may have been brought, the transferee court must have subject matter jurisdiction and personal jurisdiction over the parties, and venue must be proper. *See Hoffman v. Blaski*, 363 U.S. 335, 344 (1960); *Chrysler Credit Corp.*, 928 F.2d at 1515; *Packer v. Kaiser Foundation Health Plan of Mid-Atlantic States, Inc.*, 728 F.Supp. 8, 11 & n.2 (D.D.C. 1989). The parties here agree that this case may have been brought in the District of Arizona.

B.    The balance of interests weighs strongly in favor of transfer

The first factor for a court to consider is the plaintiff's choice of forum. Although the plaintiff's choice of forum should rarely be disturbed, courts should give less deference to the plaintiff's choice of forum when the plaintiff does not reside in the district. *Employers Mut. Cas. Co.*, 618 F.3d at 1167-68. Safari Club has two local chapters in New Mexico and has 576 members who are citizens of New Mexico. *See* Compl. ¶ 13, ECF No. 1. The subject matter of this lawsuit also has a relationship to New Mexico because it involves the Federal Defendants' failure to reach an agreement with the State of New Mexico wildlife management authorities in developing the 10(j) Rule revisions, prompting them to withdraw, and the impact the revisions will have on New Mexico's wildlife and hunting community. Despite these connections to the forum state, it is undisputed that Safari Club is incorporated in the State of Arizona and is a resident there. Accordingly, Safari Club would not be inconvenienced by litigating this case in the District of Arizona. Moreover, the District of Arizona is equally adept at considering the interests of New Mexico's hunting community when considering Plaintiff's legal claims. The District Court for the District of Arizona is already considering similar claims and interests of

8

New Mexico organizations and citizens in the Coalition case.

Turning to the next factors, the parties agree that most of the discretionary factors are neutral here. The Court finds that the factors of accessibility of witnesses and proof; the cost of making proof; the enforceability of a judgment; congested dockets; conflict of laws; and a local court considering questions of local law do not favor either forum. This case involves questions of federal law and should be decided on the administrative record and summary judgment briefs.

The last factor involves considerations of judicial economy, and this factor weighs strongly in favor of the case being heard by the Arizona Court. This case involves substantial factual and legal similarities to the three consolidated suits – all four cases involve ESA and NEPA claims challenging the revised 10(j) Rule, albeit from different perspectives, and all four cases will be resolved by examining the identical administrative record.[1] The Court recognizes that Safari Club is a distinct entity from the parties in the Arizona cases[2] and that the claims are not identical to those currently before the Arizona Court. Unlike here, the Arizona cases do not focus on errors committed by the FWS in their dealings with New Mexico state wildlife management authorities, on alleged procedural violations in the mitigation strategies available to the State of New Mexico, or on the refusal to include an "escape clause" that would require the FWS to restore the original 10(j) Rule if any actions cause a reclassification of the NEP to essential, threatened, or endangered status. Nevertheless, the cases all involve whether the Federal Defendants properly considered the best scientific information with regard to the Mexican wolf's population size, necessary geographic range, and the effects on wild ungulate

[1] Contrary to Plaintiff's argument, the case of *WildEarth Guardians v. Sandoval*, 1:12-cv-00118-JCH-SCY, is not active in this Court and is not sufficiently similar to this case to counter-balance the interests in judicial economy that warrant transfer to the court that will be reviewing the same administrative record and considering similar claims as the consolidated cases.
[2] Notably, the plaintiffs in the Coalition case include the New Mexico Trappers Association and New Mexicans who engage in the hunting and outfitting business. *See* Coalition Petition ¶¶ 10, 12, ECF No. 16-4.

and other prey species.

The following comparison of the Safari Club Petition with the petitions/complaints in the consolidated case reveals the similarity of the cases and why justice would best be served by transfer so that one well-versed court can consider all the claims:

- *Compare* Safari Club Petition ¶ 3, ECF No. 1 ("the rule revisions violate federal law; harm the interests of the members of the hunting community who rely on the elk, deer and other wildlife upon which the Mexican wolves prey"), *with* Coalition Am. Petition ¶ 10, Ex. D, ECF No. 16-4 ("Additionally, members of these organizations engage in the hunting and outfitting business. These members will also suffer actual and imminent injury from the 2015 10(j) Rule with the reduction in elk and other wildlife populations upon which these hunters and outfitters depend.").

- *Compare* Safari Club Petition ¶ 129, ECF No. 1 ("Federal Respondents violated 16 U.S.C. §1539(a) and (j) of the ESA and 5 U.S.C. §706(2) of the APA by failing to promulgate regulations for the Mexican wolf NEP that constitute an agreement between the FWS, the NM Commission and NMDGF, and the hunting community."), *with* Coalition Am. Petition ¶ 244-46, Ex. D, ECF No. 16-4 (asserting that FWS violated the ESA in failing to reach agreement with persons holding an interest in land who will be impacted by 10(j) Rule).

- *Compare* Safari Club Petition ¶163 ("Federal Respondents incorrectly asserted that the Mexican Wolf NEP Rule Revision provided mitigation strategies that would alleviate the harm that the expanded and increased Mexican wolf populations could impose on wild ungulate populations and on the hunters and hunting community that depend upon those ungulates by claiming that 'the final rule provides States the authority to take Mexican wolves in response to unacceptable impacts to wild ungulate herds[.]'"), *and* ¶ 167 ("The 2014 EIS and ROD did not assess the harm that would be caused to wild ungulate populations, the State, the hunters and the hunting community during the time necessary for the State to obtain the required documentation of an unacceptable impact and during the time necessary for the State to comply with all of the requirements identified in the rule for requesting removal of the offending wolves."), *with* Coalition Am. Petition ¶¶195-201, ECF No. 16-4 (section asserting that the Final EIS "fails to adequately analyze the effects of its 10(j) Rule upon big game (elk) hunting activities").

- *Compare* Safari Club Petition ¶¶ 140-41 ("These revisions constitute the release of the experimental population outside of its current range without furthering the conservation of the species. . . . As a result of Federal Respondent's actions, one of the two key states responsible for Mexican wolf recovery is no longer participating in that recovery effort and a major stakeholder group whose

participation, support and contribution is essential to recovery has been inadequately protected from the impact of the rule revisions."), *with* Center for Biological Diversity Compl. ¶¶ 109-116, ECF No. 16-3 (asserting various ways in which FWS failed to provide for species recovery), *and* Coalition Am. Petition ¶ 234, ECF No. 16-4 ("The USFWS has not shown that its 2015 10(j) Rule is 'likely' to achieve success in both survival and establishment of its experimental population…").

- *Compare* Safari Club Petition ¶ 146 ("Federal Respondents violated 50 C.F.R. §17.81(b) by drafting the Mexican Wolf NEP Rule Revisions to authorize an expanded release of the Mexican wolf NEP despite a lack of scientific and commercial data demonstrating that the release would further the conservation of the species."), *with* Center for Biological Diversity Compl. ¶ 119 (faulting FWS for failing to use best available scientific information in setting northern boundary for wolf), *and* Coalition Am. Petition ¶¶ 204-208 (asserting that FWS's decision to release Mexican wolves into unsuitable habitat is arbitrary and capricious), *and* ¶ 234 (faulting FWS for its failure and neglect to undertake proper analyses and studies to properly inform itself).

The Court finds Judge Johnson's interest-of-justice analysis persuasive in terms of the judicial savings and the depth of understanding that will result in having one court consider all the competing claims of the parties:

> [B]oth this case and the District of Arizona case concern FWS's fulfillment of its obligations under NEPA and the ESA in developing the revised 10(j) Rule for the Mexican wolf recovery program; the claims in both cases implicate the same rulemaking and environmental process; and the resolution of Plaintiffs' claims in both cases will be based on judicial review of the same extensive Administrative Record…

> [T]he divergent interests of both sets of Plaintiffs come into play by raising the real possibility of conflicting opinions and rulings on the validity of the revised 10(j) Rule. Plaintiffs in the New Mexico case represent the livestock industry and seek to invalidate the revised 10(j) Rule, including its expansion of Mexican wolf range and population goals. Plaintiffs representing environmental interests in the Arizona case also seek to invalidate the revised 10(j) Rule based on similar arguments, but want to see FWS do even more in expanding Mexican wolf numbers and range. The incompatibility between these positions means that FWS may be subject to conflicting court orders or injunctions concerning whether the Mexican wolf reintroduction program is too expansive or not expansive enough.

> The Court finds that separate proceedings in these cases would not only be an unwise use of judicial resources, but would force the federal Defendants to

expend resources to defend the same 10(j) Rule in two different proceedings.
Defs.' Mot. to Transfer, Ex. B (Mem. Op. and Order) at 11-12, ECF No. 16-2.

This Court also concludes that the Federal Defendants have met their burden of showing that trying this substantially similar case in New Mexico is inconvenient. Significantly, Safari Club is a resident of Arizona and would not be inconvenienced by the transfer. The District of Arizona is well-suited to consider all the New Mexico interests implicated in this case, and there are considerable cost savings in having one court considering the voluminous administrative record. Finally, Petitioner has not shown that it will be prejudiced by a transfer. The District of Arizona has stayed briefing in their case to allow this Court time to resolve the motion to transfer. Safari Club has had a copy of the Administrative Record since December 22, 2015. *See* Defs.' Reply 12 n.8, ECF No. 19. There is no reason to believe that the District Court of Arizona would refuse to give Safari Club enough time to adequately prepare its case. Having considered all the relevant factors under 28 U.S.C. § 1404(a), the Court finds that this case could have been brought in the District of Arizona and that the convenience to the parties and the interests of justice weigh in favor of transfer.

**IT IS THEREFORE ORDERED** that the Federal Defendants' Motion to Transfer Venue to the District of Arizona for Consolidation with Related Cases (**ECF No. 16**) is **GRANTED**. The Clerk of the Court is ordered to transfer this case to the United States District Court for the District of Arizona.

_____
**UNITED STATES DISTRICT JUDGE**